233 N.J. Super. 91 (1989)
558 A.2d 42
H. JOHN HOMAN COMPANY, INC., PLAINTIFF-APPELLANT,
v.
WILKES-BARRE IRON AND WIRE WORKS, INC. AND THOMAS LINDSTROM & COMPANY, INC., DEFENDANTS, AND FIRST EASTERN BANK, N.A., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 1989.
Decided May 11, 1989.
*92 Before Judges PRESSLER, SCALERA and STERN.
Brian F. McDonough argued the cause for appellant (Brennan and Bernardin and Shanley & Fisher, attorneys, Michael G. Brennan, on the brief).
William E. Reifsteck argued the cause for respondent (Capehart & Scatchard, attorneys).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal raises a narrow but fundamental question respecting accounts-receivable financing. If an account debtor has a defense or setoff which would enable him to withhold all or a part of the payment of the account but nevertheless, by mistake or negligence or without knowledge of a defense, he tenders full payment to an assignee for value of the account, who accepts it without notice of defenses, may the debtor thereafter recover that payment or any part of it from the assignee on restitutionary or other equitable principles? Although this issue has not been heretofore addressed in this jurisdiction, it has recently been considered by a number of others which, uniformly, have opted to follow the lead of the seminal opinion of the First Circuit Court of Appeals in Michelin Tires, etc. v. First Nat. Bank of Boston, 666 F.2d 673 (1st Cir.1981), which answered this question, essentially for policy reasons, in the negative. We are convinced of the correctness *93 of the views expressed by Michelin and, consequently, join the roster of states which have adopted them.
The question arises in a typical and virtually undisputed factual complex. Plaintiff H. John Homan Company, Inc. (Homan) was the general contractor on a Gloucester County Municipal Utilities Authority construction project in accordance with a public works contract entered into between them in June 1983. Homan, as required by N.J.S.A. 2A:44-143, furnished the Authority with a bond guaranteeing the payment of all labor and materials provided to the job. In July 1983, Homan entered into a structural steel subcontract with defendant Wilkes-Barre Iron, and Wilkes-Barre in turn subcontracted part of the steel work to defendant Thomas Lindstrom & Company, Inc. On March 5, 1984, after substantial work on the project had been completed, Wilkes-Barre notified Homan that defendant First Eastern Bank, N.A. (bank) was a secured creditor and several weeks later requested Homan to make the next progress payment to it and the bank as co-payees. Homan complied and issued its check for $35,000 in that manner. Early in April Wilkes-Barre advised Homan that the bank was now in possession of all of its accounts receivable and that its final payment, then due, should be made to the bank alone. Homan again complied, sending the bank its check in the amount of $58,415, a sum which represented final payment less a retainage of $5,000 for undelivered materials.
Lindstrom in the meantime had sent a bill for work to date to Wilkes-Barre on March 13, 1984. This bill remained unpaid despite Homan's above described two subsequent payments to Wilkes-Barre and the bank. Lindstrom sent Wilkes-Barre its final bill on April 30, 1984, after Homan's last payment to the bank on Wilkes-Barre's account. Neither the bank nor Homan had been noticed of either of Lindstrom's billings and, insofar as this record indicates, neither had required any representation or certification from Wilkes-Barre respecting payment of its *94 own subcontractors and materialmen.[1] Wilkes-Barre, predictably, became insolvent and was unable to meet its obligation to Lindstrom. Lindstrom's bills, totaling some $35,000, remained unpaid, and in July 1984 it filed a statutory notice of lien claim pursuant to the Municipal Mechanics' Lien Law, N.J.S.A. 2A:44-132. It thereafter filed notice of claim on Homan's payment bond. The claim was validated, bond proceeds released to it, and Homan, ultimately liable on the bond, required to make payment. Homan seeks by this action to recover that payment from the bank and appeals from summary judgment in the bank's favor dismissing that claim.[2]
Homan predicates its affirmative claim against the bank on N.J.S.A. 12A:9-318(1)(a), which provides in full as follows:
Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in 12A:9-206 the rights of an assignee are subject to
(a) All the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom....
*95 Homan argues that the use of the word "claim" in the stipulation that the assignee's rights are subject to "any defense or claim arising" from the contract between the account debtor and the assignor bespeaks a legislative intention not only to permit the account debtor to interpose affirmative defenses and setoffs in an action against him by the assignee to recover on the account, but also to permit him, as plaintiff, to make affirmative claims against the assignee in order to recover a mistaken or wrongful payment made to it. The trial judge disagreed, and so do we.
Our analysis is, at the outset, premised on the understanding that Section 9-318(1)(a) was intended to make no change in New Jersey law existing at the time of adoption of the Uniform Commercial Code, N.J.S.A. 12A:1-101, et seq. That is expressly stated by paragraph 1 of the New Jersey Study Comment on Section 9-318, which echoes the Uniform Commercial Code Comment, whose explanation of that code section commences with the statement that "Subsection (1) makes no substantial change in prior law."
Our first step then is to determine the scope of the account debtor's rights against the assignee prior to the Code. The basic rule, succinctly stated by the former Supreme Court in Falkenstern v. Herman Kussy Co., 25 N.J. Misc. 447, 55 A.2d 11 (Sup. Ct. 1947), aff'd 137 N.J.L. 200, 59 A.2d 372 (E. & A. 1948), and reaffirmed by Talcott v. H. Corenzwit and Company, 76 N.J. 305, 309-310 (1978), is that
An assignee of a chose in action takes what the assignor had, subject to all set-offs, discounts and defenses which the debtor has, not only against the assignee but also against the assignor before notice of the assignment, * * * but the assignee does not thereby, without more, assume the liabilities of the assignor.
[25 N.J. Misc. at 448, 55 A.2d 11 (citations omitted)]
Clearly then, since the essence of the assignment is an assignment of rights under a contract without a delegation of the performance obligation, the account debtor may defend against his own obligation to pay based on any defensive posture available to him were the assignor seeking payment. Thus, he *96 is able to defeat the assignee's claim to all or part of the payment rights transferred to him by the assignor. In effect then, the actual value of the assigned right to payment by the assignor's debtor may be diminished, if not completely vitiated, by the defenses and setoffs available to the debtor. But while the debtor can defeat the assignee's payment right, he cannot impose affirmative liability on the assignee beyond the amount of the assigned contract debt for damages flowing from the assignor's failure of or defect in performance. Consequently, the maximum loss risked by the assignee is the loss of the value he has given for the assignment. In sum then, while the account debtor can avoid payment to the assignee, he cannot obtain damages from the assignee.[3] These are well understood and well settled principles in this jurisdiction as a matter of both pre- and post-Code law. See Talcott v. H. Corenzwit and Company, supra. And see Chemical Bank v. Penny Plate, 144 N.J. Super. 390 (App. Div. 1976); Toker v. Perl, 108 N.J. Super. 129 (App. Div. 1970).
There is, thus, no doubt that if Homan had not made payment in full to the bank of Wilkes-Barre's payment rights under the Homan/Wilkes-Barre contract, Homan could have deducted from the amount due the sum necessary to pay Wilkes-Barre's subcontractor, Lindstrom. And if the bank had had to sue Homan to recover Wilkes-Barre's payment rights, Homan would have been entitled to a setoff in the amount of Lindstrom's claim. Indeed, it would have been entitled to defend against payment for any cause arising out of Wilkes-Barre's performance.
The question which has not been raised in this jurisdiction as a matter of pre-Code law is the precise question here posed, *97 namely, whether an account debtor who pays the assignee despite an available defense or setoff can recover that payment on equitable principles. This question has, however, been dealt with by the Restatement, Restitution (1937) § 14(2) at 55, which declares as a common-law proposition that
An assignee of a non-negotiable chose in action who, having paid value therefor, has received payment from the obligor is under no duty to make restitution although the obligor had a defense thereto, if the transferee made no misrepresentation and did not have notice of the defense.
As the note on this section of the Restatement by its original Reporters, Warren A. Seavey and Austin W. Scott, explains, this rule was then not only virtually uniformly followed throughout the country but was also regarded as the correct rule by the Advisers. See Restatement, supra, § 13, 14, reporters' notes, p. 9.[4]See also Restatement, supra, § 28(d) at 124, which applies the same rule in respect of payment induced by fraud or misrepresentation where the payee himself was not a party to or on notice of the fraud when he gave value for the payment right.[5]And see, in accord, 3 Restatement (Second), Contracts, § 336 (defenses against an assignee).
*98 New Jersey typically gives substantial weight to the Restatement view, particularly in respect of issues it has not yet addressed. We have no reason to believe that it would not have done so in this instance. We are therefore persuaded that if this had been a pre-Code controversy, the bank would have prevailed. That the Code was not intended to change the law is, by itself, enough reason for the bank to prevail now.
We are, however, satisfied that the validity of the bank's position is justified by other significant considerations as well. As cogently addressed by Michelin Tires, etc. v. First Nat. Bank of Boston, supra, 666 F.2d 673 (1st Cir.1981), there are both textual and policy reasons for rejecting the account debtor's claim for restitution. First, as a textual matter, we note, as did Michelin, that although the word "claim" in Section 9-318(1) is suggestive of an affirmative position, the Uniform Commercial Code Comment, supra, paraphrases the statutory text of "defense or claim" as "defenses or set-offs" without using the word "claim" at all. The view that "claim" was not intended to bespeak a right of affirmative action in the debtor as against the assignee is further supported in this jurisdiction by the holding of Falkenstern, op. cit. supra, which expressly reserves to the debtor only the "set-offs, discounts and defenses" which the debtor has against the assignee. Considering further that Section 9-318(1) is entitled "Defenses Against Assignee," and that the phrase "defense or claim" is used to define a potential limit on the assignee's right to obtain payment from the debtor, we are convinced that the word "claim" is used in 9-318(1)(a) in its technical sense. Thus, it includes setoffs, recoupments, discounts, and those other offsetting *99 payment rights of the debtor which are not, as a historical common-law pleading concept, encompassed within the strict definition of affirmative defenses.[6]
Of much greater significance, however, are the policy considerations here involved. Again as Michelin points out, accounts-receivable financing is an important tool of the commercial community despite the fact that the scope of defenses available to the account debtor renders that form of collateral relatively uncertain. See generally Gilmore, "The Assignee of Contract Rights and His Precarious Security," 74 Yale L.J. 217 (1964). Obviously, if a bona fide lender without notice of defenses would be subject to disgorgement of payment after having credited the debt of the assignee and perhaps advancing additional funds to him, the viability of this mode of financing would be severely threatened since whatever stability and finality is now effected by payment to the assignee would be compromised. Since it is the account debtor who, among all of the assignee's innocent victims, is best able to protect himself by closely monitoring the assignee's performance on a prepayment basis, we are satisfied that the better rule is one which protects the commercial community as a whole. As the Alabama Supreme Court, which followed Michelin in Lawson State C. Col. v. First Cont. Leas., 529 So.2d 926, 932 (Ala.Sup. Ct. 1988), felicitously observed
These rules spring not from a love of banks, but from a love of credit and from a common sense recognition of the realities of chattel paper and accounts receivable financing. The bank or finance company is in the business of extending credit  it usually has no responsibility as to the underlying transaction and virtually no power to enforce the adequate performance of the underlying obligation.
We are aware that prior to Michelin, some courts had permitted the restitutionary action but generally in circumstances in *100 which the assignee was not merely an arms-length security holder but a participant with the assignor in the underlying transaction. See Benton State Bank v. Warren, 263 Ark. 1, 562 S.W.2d 74 (Sup. Ct. 1978); Farmers Acceptance Corporation v. DeLozier, 178 Colo. 291, 496 P.2d 1016 (Sup. Ct. 1972); K Mart Corp. v. First Pennsylvania Bank, 16 Pa. D. & C.3d 509 (C.P. Phila. 1980); Massey-Ferguson Credit Corp. v. Brown, 173 Mont. 253, 567 P.2d 440 (Sup. Ct. 1977). And see Gilmore, supra, suggesting a restitutionary rule. But see contra Meyers v. Postal Finance Co., 287 N.W.2d 614 (Minn. Sup. Ct. 1979); Anderson v. Southwest Sav. and Loan Ass'n, 117 Ariz. 246, 571 P.2d 1042 (Ct. App. 1977). Courts which have, however, considered the question since Michelin have been persuaded both by its textual and public policy analyses and have rejected the restitutionary rule. See Cuchine v. H.O. Bell, Inc., 210 Mont. 312, 682 P.2d 723 (Sup. Ct. 1984)[7] (distinguishing Massey-Ferguson Credit Corp., supra, on its facts); Lydig Const., Inc. v. Rainier Nat. Bank, 40 Wash. App. 141, 697 P.2d 1019 (Ct. App. 1985); Lawson State C. Col. v. First Cont. Leas., supra, 529 So.2d 926; Murr v. Selag Corp., 113 Idaho 773, 747 P.2d 1302, 1309 (Ct. App. 1987) (endorsing the Michelin rule in dictum); Phil Greer & Associates, Inc. v. Continental Bank, 614 F. Supp. 423 (E.D. Pa. 1985) (predicting that the Pennsylvania Supreme Court would follow Michelin and distinguishing K Mart, supra, on its facts); Gold Circle, etc. v. Riviera Finance-East Bay, 540 F. Supp. 15 (N.D. Cal. 1982) (predicting that the Supreme Court of California would follow Michelin). See also, supporting the Michelin rule, Henson, "A Problem Involving Assignments of Accounts Under Article 9," 40 Wash. & Lee L. Rev. 41 (1983); B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code (2 ed. 1988), § 11.04[5] at 11-25. We have found no dissenting voice to the *101 Michelin holding, and we are persuaded for the reasons herein set forth that its holding is correct.
The summary judgment dismissing the complaint is affirmed.
NOTES
[1] Indeed, in what the bank concedes to have been an unusual contractual provision between Homan and Wilkes-Barre, Wilkes-Barre's obligation to furnish Homan with signed releases from its subcontractors and materialmen did not arise until it, Wilkes-Barre, had received final payment. Nor do we find anything else in the contract requiring Wilkes-Barre to give any assurance of payment or notice of claim to Homan as progress payments were made to it. Nevertheless, as is customary, the contract did require Wilkes-Barre to indemnify Homan against the claims of Wilkes-Barre's creditors.
[2] Homan's complaint against defendants Wilkes-Barre and the bank originally sounded in contract and fraud. Its claim of restitutionary right against the bank as assignee of Wilkes-Barre's accounts receivable was added by amendment to the complaint, and that is the only issue litigated in the trial court and now before us. Leave to so amend the complaint had been denied by the trial court, and we reversed that order on Homan's interlocutory appeal taken on leave granted. See our earlier opinion under Docket No. A-527585T7. We also noted in that opinion that Homan was not challenging the trial judge's conclusion that neither the Trust Fund Act, N.J.S.A. 2A:44-148, nor the Municipal Mechanics' Lien Law, N.J.S.A. 2A:44-125, imposed a lien in Lindstrom's favor on the sum paid by Homan to the bank on Wilkes-Barre's accounts receivable. Since Homan had not attempted to raise those issues again, we do not address them. Nor does Homan contest the validity of Lindstrom's notice of claim.
[3] We deal, of course, in this statement of principle and in reaching our conclusion here with an assignee who is not on notice of defenses when he takes the assignment and has not subjected himself to the same scope of liability as the assignee is chargeable with by reason of his own participatory action, identity with the assignee, or relationship with the assignee.
[4] More particularly, the Note states that

Upon Subsection (2) there is also a division of opinion among the Advisers as to whether the principle of bona fide purchase applies to the assignee of a chose in action which is subject to a defense but who has obtained payment from the obligor. One of the Advisers, Mr. Patterson, urges that the assignee lost his money at the time when he paid for the assignment and that, if allowed to retain what he subsequently receives from the obligor who paid in ignorance of the defense, he is benefiting at the expense of the obligor. The other Advisers believe that this is an ordinary illustration of the doctrine of bona fide purchase and that, at least where there is what may be described as a chose in action subject to a defense by the obligor, the assignee, having surrendered to the obligor his claim against him, should be entitled to retain what he thereby receives. This Subsection is consistent with the results reached in the case of forged or altered negotiable instruments which have been paid by a party thereto, although those cases may be supported also upon independent grounds based upon the negotiability of the instruments. [Ibid.]
[5] The Restatement provided in this respect that

A person who has paid money to another because of a mistake of fact and who does not obtain what he expected in return is entitled to restitution from the other if the mistake was induced:
* * * * * * * *
(d) by the fraud or material misrepresentation of a third person, provided that the payee has notice of the fraud or representation before he has given or promised something of value. [Ibid]
[6] Note that this distinction is maintained in our rules of practice, R. 4:5-4 enumerating affirmative defenses  but not setoff  required to be raised by the answer, and R. 4:7-1, requiring setoff and other such claims to be raised by a counterclaim.
[7] Dissenting opinions at 759 P.2d 127 (Sup. Ct. 1984).