701 A.2d 723

JOSEPH L. MAZZA AND JOAN R. MAZZA, PLAINTIFFS–
RESPONDENTS, v. RONALD SCOLERI,
DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 30, 1997—Decided October 16, 1997.

Before Judges PRESSLER, CONLEY and CARCHMAN.

*Goldenberg, Mackler & Sayegh,* attorneys for appellant (*Dawn Van Keuren,* on the brief).

*Cole & Cole,* attorneys for respondents (*Maurice Y. Cole, Jr.,* on the brief).

PER CURIAM.

This controversy arises out of a written residential condominium lease, option to purchase, and contract of sale. The disputed question was whether, on the sale of the condominium to a third person, the lessees, plaintiffs Joseph L. and Joan R. Mazza, were entitled to the return of their option payment from the owner-lessor, defendant Ronald Scoleri, in accordance with the parties' asserted subsequent oral agreement. Following a bench trial, Judge Winkelstein found that such an oral agreement was in fact entered into and that plaintiffs' part performance thereof and their forbearance in reliance thereon estopped defendant from relying on the statute of frauds. The judge, therefore, concluded that the oral agreement was enforceable and entered a conforming judgment awarding plaintiffs a portion of their option payment less undisputed sums due defendant under the lease. Defendant appeals. We affirm substantially for the reasons stated by Judge Winkelstein in his oral decision. *See also R.* 2:11–3(e)(1)(A) and (E).

We add the following observations. Defendant owned a two-bedroom condominium in Brigantine that he wished to sell. Plaintiff Joseph L. Mazza was the part owner of a restaurant in Brigantine and was looking for a nearby place to live. The two met at the restaurant and discovered their mutual interest. Plaintiffs were not then ready to purchase but believed they would want to in the future. Accordingly, the parties agreed that plaintiffs would rent the condominium for three years with an option to purchase exercisable at any time within that period for a purchase price of $160,000. Plaintiffs agreed to pay an option price of $20,000 to be credited against the purchase price if the option were exercised and non-refundable if it were not. Conforming documents were prepared and executed on February 28, 1991, providing that the lease term would commence on April 25, 1991. The $20,000 option price, characterized by plaintiff Joseph L. Mazza as a deposit, was paid in escrow. Amicable relations between the parties ensued.

It is not disputed that in October 1993, plaintiffs had to make different residential arrangements because they needed a larger home for their family. Although the condominium was suitable for them, their daughter had then returned with her two children to live with her parents. It is not disputed that the parties then agreed that plaintiffs would look for another buyer for the condominium, and plaintiffs did so. The dispute between the parties is whether that agreement encompassed the disposition of the option price upon a sale to a third-party buyer. According to plaintiffs, it was agreed and understood that if the unit was sold for at least $160,000, defendant would return plaintiffs' option payment/deposit, and that if it were sold for more than that sum, the parties would also share the difference in a yet undefined proportion. Defendant denied that any such agreement was made, conceding, however, that he did have the unexpressed intention of returning the $20,000 if the purchase price were at least $180,000.

During the ensuing five or six months, plaintiffs, despite their best efforts, were unable to consummate a sale and so advised

defendant. Defendant then himself undertook to sell the unit. In late March 1994, defendant brought an acquaintance of his to see the unit. That prospective buyer returned again in early April and again a week later. His ultimate best offer was $155,000 conditioned upon plaintiffs' vacating the premises by May 28. Defendant discussed the offer with plaintiffs, and plaintiffs agreed that it should be accepted, making plans, at some substantial personal inconvenience, to leave the condominium by that date. It was Joseph L. Mazza's recollection that the deal was proposed to him sometime in late April and confirmed to him by defendant on May 2. Title closed on May 31. In connection with the closing of title, plaintiffs were requested to and accordingly did execute a release, apparently by way of a quitclaim deed, of their rights in the premises. Following the sale, plaintiffs demanded the return of their $20,000 "deposit," and commenced this action for its recovery when their demand was refused. Defendant counterclaimed, seeking alleged unpaid condominium rent and other charges in the amount of $2,242.76.

Based on the evidence before him, Judge Winkelstein found that the parties had in fact entered into an oral agreement whose import was that upon the sale of the unit, whenever that occurred, plaintiffs would receive so much of their payment back as would leave defendant with the benefit of a gross purchase price of $160,000. Accordingly, since the sale price was $155,000, the judge concluded that defendant was entitled to retain $5,000 of the payment but required to return $15,000.[1] We defer to those factual findings since they are based on substantial evidence in the record as a whole. *See, e.g., Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 483–484, 323 *A.*2d 495 (1974). *See also Matter of J.W.D.,* 149 *N.J.* 108, 116–117, 693 *A.*2d 92 (1997); *State v. Barone,* 147 *N.J.* 599, 615, 689 *A.*2d 132 (1997).

---

[1] The judge deducted from that sum, the $1,255 due from plaintiffs to defendant, entering judgment in plaintiffs' favor in the amount of $13,745 but without prejudgment interest.

The legal issue, of course, was the enforceability of the oral agreement as a valid modification of the original written documents. Defendant's position was simply that under the statute of frauds, N.J.S.A. 25:1–5d,[2] the written agreements were not subject to later oral revision. He consequently argued that as soon as the option period expired on April 24, 1994, without the option being exercised and without any written modification of the original agreement having been executed, he had no further obligation to plaintiffs in respect of the non-refundable option payment. The question then was whether the conduct of the parties invoked an exception to application of the statute of frauds.

The thrust of Judge Winkelstein's findings in this regard, all of which are supported by the record, was that plaintiffs, in reliance on the oral agreement, had foregone their opportunity to purchase the unit themselves under the original contract of sale and option agreement. The judge accepted Joseph L. Mazza's testimony that he had the financial ability to have purchased the unit within the option period and, but for the oral agreement, would surely have done so in order to protect the $20,000 payment. He would have then sought to resell to his own buyer. He also testified that he executed the release required of him in connection with defendant's sale to his buyer without demur in the expectation that the option payment would be refunded to him after closing. The judge found this testimony to be entirely persuasive, and we accept that evaluation.

The judge was satisfied that plaintiffs' conduct in reliance on the oral agreement constituted part performance of the oral agreement taking it out of the statute of frauds. *See, e.g., Lahue v. Pio Costa,* 263 *N.J.Super.* 575, 598–600, 623 *A.2d* 775

---

2 As Judge Winkelstein noted, *N.J.S.A.* 25:1–5 was substantially revised by *L.* 1991, *c.* 86, later amended by *L.* 1995, *c.* 360. The 1991 revision repealed former *N.J.S.A.* 25:1–5d which precluded action, unless in writing, on a "contract or sale of real estate, or any interest in or concerning the same...." The judge held, however, that the pre–1991 statute applied to this transaction and that conclusion is not here challenged.

(App.Div.), *certif. denied,* 134 *N.J.* 477, 634 *A.*2d 524 (1993). While we do not disagree with that perception, we are of the view that the more nearly applicable exception is that articulated by *Restatement (Second) of Contracts,* § 139 (1979), which is based on an induced reliance by the promisor that results in action or forbearance on the part of the promisee substantially prejudicing the promisee. Thus § 139(1) provides as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

We think it plain that Judge Winkelstein's factual findings encompass all of the elements of the *Restatement* rule. We are also satisfied that although this section of the *Restatement* does not appear to have been expressly relied on in this jurisdiction, its thesis is not only sound but also consistent with our jurisprudence. *See, e.g., Carlsen v. Carlsen,* 49 *N.J.Super.* 130, 139 *A.*2d 309 (App.Div.1958). As we noted in *Citibank v. Estate of Simpson,* 290 *N.J.Super.* 519, 530, 676 *A.*2d 172 (App.Div.1996), "New Jersey typically gives considerable weight to *Restatement* views, and has, on occasion, adopted those views as the law of this State when they speak to an issue our courts have not yet considered." *See also H. John Homan Co. v. Wilkes–Barre,* 233 *N.J.Super.* 91, 98, 558 *A.*2d 42 (App.Div.1989); *Dziedzic v. St. John's Cleaners & Shirt Laund., Inc.,* 99 *N.J.Super.* 565, 573, 240 *A.*2d 697 (App.Div. 1968), *rev'd on other grounds,* 53 *N.J.* 157, 249 *A.*2d 382 (1969); *A. v. M.,* 74 *N.J.Super.* 104, 118–119, 180 *A.*2d 541 (Cty.Ct.1962). We, therefore, adopt the *Restatement* rule as expressed by § 139(1).

The judgment appealed from is affirmed.