NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2828-17T2

IN THE MATTER OF THE
ADOPTION OF AMENDMENTS
TO N.J.A.C. 11:22-1.1

_____

APPROVED FOR PUBLICATION

April 29, 2019

APPELLATE DIVISION

Argued March 12, 2019 – Decided April 29, 2019

Before Judges Yannotti, Rothstadt and Gilson.

On appeal from the New Jersey Department of Banking and Insurance, Agency Docket No. PRN 2017-207.

Arthur C. Meisel argued the cause for appellants New Jersey Dental Association and Mark Vitale, D.M.D.

Jeffrey S. Posta, Deputy Attorney General, argued the cause for respondent New Jersey Department of Banking and Insurance (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jeffrey S. Posta, on the brief).

The opinion of the court was delivered by

YANNOTTI, P.J.A.D.

Mark Vitale, D.M.D., and the New Jersey Dental Association (NJDA) appeal from the adoption of administrative rules by the New Jersey Department of Banking and Insurance (Department) implementing the Health

Claims Authorization, Processing and Payment Act (HCAPPA). <u>L.</u> 2005, <u>c.</u> 352 (codified as amended in various sections of titles 17, 17B, and 26 of the New Jersey Statutes Annotated). We affirm.

I.

We begin our consideration of the appeal with a brief summary of the history of HCAPPA. The Health Information Electronic Interchange Technology Act (the HINT Act) was enacted in 1999. <u>L.</u> 1999, <u>c.</u> 154 (codified as amended in various sections of titles 17, 17B, 26, and 45 of the New Jersey Statutes Annotated). The HINT Act provided for, among other things, the electronic receipt, transmission, and prompt payment of claims for health and dental benefits. <u>Ibid.</u>

HCAPPA amended certain provisions of the HINT Act, and added substantially-identical statutes that permit health service corporations, group health insurers, hospital service corporations, medical service corporations, individual health insurers, health maintenance organizations, and prepaid prescription service organizations to obtain reimbursement of overpayments of claims, subject to certain conditions and criteria. The reimbursement provisions state:

> (10) With the exception of claims that were submitted fraudulently or submitted by health care providers that have a pattern of inappropriate billing or claims that were subject to coordination of benefits,

2

no payer shall seek reimbursement for overpayment of a claim previously paid pursuant to this section later than [eighteen] months after the date the first payment on the claim was made. No payer shall seek more than one reimbursement for overpayment of a particular claim. At the time the reimbursement request is submitted to the health care provider, the payer shall provide written documentation that identifies the error made by the payer in the processing or payment of the claim that justifies the reimbursement request.

. . . .

(11)(a) In seeking reimbursement for the overpayment from the health care provider, except as provided for in subparagraph (b) of this paragraph, no payer shall collect or attempt to collect: (i) the funds for the reimbursement on or before the [forty-fifth] calendar day following the submission of the reimbursement request to the health care provider; (ii) the funds for the reimbursement if the health care provider disputes the request and initiates an appeal on or before the [forty-fifth] calendar day following the submission of the reimbursement request to the health care provider and until the health care provider's rights to appeal set forth under paragraphs (1) and (2) of subsection e. of this section are exhausted; or (iii) a monetary penalty against the reimbursement request, including but not limited to, an interest charge or a late fee. The payer may collect the funds for the reimbursement request by assessing them against payment of any future claims submitted by the health care provider after the [forty-fifth] calendar day following the submission of the reimbursement request to the health care provider or after the health care provider's rights to appeal set forth under paragraphs (1) and (2) of subsection e. of this section have been exhausted if the payer submits an explanation in writing to the provider in sufficient detail so that the provider can reconcile each covered person's bill.

A-2828-17T2

[N.J.S.A. 17:48E-10.1(d) (health service corporations); N.J.S.A. 17B:27-44.2(d) (group health insurance companies); N.J.S.A. 17:48-8.4(d) (hospital service corporations); N.J.S.A. 17:48A-7.12(d) (medical service corporations); N.J.S.A. 17B:26-9.1(d) (individual health insurers); N.J.S.A. 26:2J-8.1(d) (health maintenance organizations); N.J.S.A. 17:48F-13.1(d) (prepaid prescription service organizations).]

In 2017, the Department issued a notice stating that it intended to adopt amendments to the rule governing the prompt payment of health and dental claims, and adopt new rules addressing, among other things, the reimbursement by payers of claim overpayments. See 49 N.J.R. 2729(a) (proposed Aug. 21, 2017). One of the proposed rules stated in relevant part that a "health carrier or its agent may offset" any overpayment "against a provider's future insured claims," subject to certain conditions. Ibid. (later codified at N.J.A.C. 11:22-1.8(b)(5)).

On October 17, 2017, Dr. Vitale and the NJDA submitted comments to the rule proposal. They asserted that the reimbursement provisions of HCAPPA only apply to health benefits plans and do not permit payers to obtain reimbursements of overpayments of claims paid under "stand-alone" or "dental-only" plans. Dr. Vitale and the NJDA also asserted that the Department should confirm that the word "offset" used in the proposed regulation has the same meaning as "setoff" under New Jersey law. They

argued that the payer could not apply a "setoff" to a provider's future claims for patients other than the patient for whom the overpayment was made.

The Department responded to these comments when it issued its notice of rule adoption. See 50 N.J.R. 829(a) (Feb. 5, 2018). The Department stated that the suggested change in the proposed rule governing reimbursement of overpayments is not required. The Department noted that the reimbursement provisions apply to health carriers, which as defined under HCAPPA do not include dental service corporations or dental plan organizations.

The Department concluded, however, that health carriers could nevertheless obtain reimbursements of any overpayments they may have made on claims, including claims submitted under "stand-alone" or "dental-only" plans. The Department stated that HCAPPA's reimbursement provisions "are based on the type of carrier, not the type of insurance plan."

The Department cited as authority for its comment our unpublished decision in N.J. Dental Ass'n v. Horizon Blue Cross Blue Shield of N.J., No. A-1834-12 (App. Div. June 5, 2014), certif. denied, 219 N.J. 630 (2014).[1] In Horizon, we held that HCAPPA permits health carriers who pay dental insurance benefits to recover overpayments by offsetting the reimbursements

---

[1] Rule 1:36-3 states that unpublished opinions do not "constitute precedent" and are not "binding upon any court." The rule did not preclude the Department from citing and relying upon our opinion in Horizon.

against benefits due on the claims submitted under "stand-alone" or "dental-only" plans. Id. (slip op. at 2). We also held that HCAPPA permitted carriers to obtain reimbursements as offsets to future claims submitted by the provider for unrelated patients. Ibid.

In addition, the Department commented that there was no need to clarify the term "offset" in the proposed regulation. The Department stated, "[u]pon review, the Department has determined that no clarification is necessary as [the words] 'offset' and 'setoff' are synonymous." The Department also stated that it did not "believe there is any need to define these terms since their meaning is plain and well-understood." This appeal followed.

## II.

The Department argues that the NJDA is barred under principles of collateral estoppel from raising its challenge to the rules adopted to implement the reimbursement provisions of HCAPPA. The Department notes that NJDA was the plaintiff in the Horizon case, and in that case, the NJDA unsuccessfully raised the same arguments that it has raised in this appeal.

Collateral estoppel, which is also known as issue preclusion, prohibits a party "from relitigating matters or facts which the party actually litigated and which were determined in a prior action, involving a different claim or cause of action, and which were directly in issue between the parties." Olivieri v.

Y.M.F. Carpet, Inc., 186 N.J. 511, 522 (2006) (quoting Zoneraich v. Overlook

Hosp., 212 N.J. Super. 83, 93-94 (App. Div. 1986)). Collateral estoppel

precludes a party from litigating an issue when:

> (1) the issue . . . is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Allen v. V & A Bros., Inc., 208 N.J. 114, 137 (2011) (quoting Olivieri, 186 N.J. at 521)].

In this appeal, the NJDA argues that the reimbursement provisions of

HCAPPA may not be applied to a carrier's overpayments of benefits under the

"stand-alone" or "dental-only" plans. The NJDA also contends that carriers

may not recover their reimbursements by offsetting such payments against a

provider's future claims for unrelated patients.

These are the identical issues that the NJDA raised in the Horizon case.

See Horizon, No. A-1834-12 (slip op. at 8, 14-15).[2] Moreover, the trial court

in Horizon and this court on appeal issued final judgments, and the decisions

---

[2] Rule 1:36-3 also provides that appellate opinions not approved for publication may be cited to the extent required by "res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law[.]"

on the issues presented were essential to the judgments. Therefore, the NJDA is precluded from relitigating the same issues in this appeal. <u>Allen</u>, 208 N.J. at 137.

Principles of collateral estoppel do not, however, bar Dr. Vitale from raising these issues in his challenge to the Department's rules. Dr. Vitale was not a party in the <u>Horizon</u> case, and it is not clear on the record before us whether he is a member of the NJDA, or in privity with the NJDA. Accordingly, we will address the issues he has raised on appeal.

III.

Dr. Vitale argues that the Department's rules pertaining to the reimbursement of claim overpayments are ultra vires because payers may not obtain reimbursements for overpayments of benefits under "stand-alone" or "dental-only" plans. We disagree.

The standard that applies to our review of agency rulemaking is well-established. We accord "great deference" to an agency's interpretation of the statutes within the scope of its authority, and the agency's adoption of rules that implement those statutes. <u>N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric.</u>, 196 N.J. 366, 385 (2008).

Such deference is especially appropriate because administrative agencies are often required to interpret statutes and adopt rules that address technical

matters for which they have specialized expertise. Ibid. Nevertheless, an administrative agency may not adopt a regulation that is "inconsistent with [the] legislative mandate." N.J. State League of Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 222-23 (1999) (citations omitted). See also N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561-62 (1978) (noting that administrative regulations "must be within the fair contemplation of the delegation of the enabling statute").

Here, Dr. Vitale argues that HCAPPA only allows the payers identified in that legislation to obtain reimbursement for overpayments of health-benefit claims. He therefore argues that even though the carriers may have paid claims under "stand-alone" or "dental-only" plans, they may not obtain reimbursement of such overpayments using the procedures set forth in HCAPPA.

Our goal in interpreting a statute is to ascertain the intent of the Legislature, and the best indication of the Legislature's intent is the statutory language. DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280 (2003)). When interpreting a statute, we give the words in the legislation their "ordinary meaning and significance." Ibid. (citing Lane v. Holderman, 23 N.J. 304, 313 (1957)). "If the [statute's] plain language leads to a clear and unambiguous result, then [the] interpretative

process is over." Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018) (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)).

As noted previously, the reimbursement statutes enacted as part of HCAPPA each provide that the "payer[s]" may recoup overpayments of claims from "health care provider[s]." The key provisions of the reimbursement statutes are defined in N.J.S.A. 17B:30-26, which was enacted as companion legislation to the HINT Act. L. 1999, c. 155, §10, amended by L. 2001, c. 67, §3. When it enacted HCAPPA, the Legislature did not amend or repeal the definitions codified in N.J.S.A. 17B:30-26. See L. 2005, c. 352.

The term "[h]ealth care provider" is defined in N.J.S.A. 17B:30-26 to mean any "individual or entity which, acting within the scope of its licensure or certification, provides a covered service defined by the health benefits or dental plan[,]" which includes, but is not limited to "a physician, dentist and other health care professionals[.]" Ibid. (emphases added). In addition, the term "insured claim" is defined as "a claim by a covered person for payment of benefits under an insured health benefits or dental plan." Ibid. (emphasis added).

Therefore, the plain language of the reimbursement provisions in HCAPPA, interpreted in accordance with the applicable definitions in N.J.S.A. 17B:30-26, shows that the Legislature intended to apply those provisions to

entities that pay insured claims, and to permit reimbursement of overpayments of all claims paid by these entities, including claims under dental plans. As the Department observed, the Legislature intended that the reimbursement provisions would apply based on the type of carrier, not the type of insurance plan for which the overpayments were made.

On appeal, Dr. Vitale has not identified anything in the legislative history of HCAPPA which shows that the Legislature intended to preclude payers from obtaining reimbursement of overpayments claims made under "stand-alone" or "dental-only" plans. Moreover, Dr. Vitale has provided no explanation whatsoever for the claimed exclusion of dental claims from the permitted reimbursements. Indeed, it would be absurd and unreasonable to read HCAPPA as permitting the payers identified in HCAPPA to recoup overpayments for all claims except those paid under dental plans.

We therefore conclude that HCAPPA permits the payers identified in the reimbursement provisions to obtain recovery for any overpayment of claims paid by these entities, including claims submitted under "stand-alone" or "dental-only" plans.

IV.

Dr. Vitale also argues that the Department erred by failing to "clarify" the regulation that allows carriers to obtain reimbursement of an overpayment

by offsetting the amount of the overpayment "against a provider's future insured claims." N.J.A.C. 11:22-1.8(b)(5). He argues the Department should have clarified the regulations by defining the term "offset" and "setoff" to limit the claims from which a payer can obtain reimbursement. Dr. Vitale asserts that such a clarification is required so that the regulations are consistent with the common law of restitution.

In support of his argument, Dr. Vitale relies upon the innocent third-party exception to the common law right of restitution, which is set forth in Restatement (Third) of Restitution and Unjust Enrichment § 67 (Am. Law Inst. 2011), which states that:

> (1) [a] payee without notice takes payment free of a restitution claim to which it would otherwise be subject, but only to the extent that
>
> (a) the payee accepts the funds in satisfaction or reduction of the payee's valid claim as creditor of the payor or of another person;
>
> (b) the payee's receipt of the funds reduces the amount of the payee's claim pursuant to an obligation or instrument that the payee has previously acquired for value and without notice of any infirmity; or
>
> (c) the payee's receipt of the funds reduces the amount of the payee's inchoate claim in restitution against the payor or another person.
>
> (2) [a] payee is entitled to the defense described in this section only if payment becomes final, and the payee learns of the payment and its ostensible application,

before the payee has notice of the facts underlying the restitution claim the defense would cut off. For purposes of this subsection, a payment becomes final when the payor is no longer entitled to countermand or recover it without the aid of legal process.

Dr. Vitale argues that our decision in H. John Homan Co. v. Wilkes-Barre Iron & Wire Works, Inc., 233 N.J. Super. 91 (App. Div. 1989), supports the adoption of the Restatement (Third) of Restitution and Unjust Enrichment § 67. In Homan, we held that an account debtor could not recover the payment it made by mistake if an assignee of the creditor was without notice of the mistake when it received the payment. 233 N.J. Super. at 95-96. In doing so, we relied upon Restatement of Restitution § 14 (Am. Law Inst. 1937), the predecessor to Restatement (Third) of Restitution and Unjust Enrichment § 67. Homan, 233 N.J. Super. at 97-98.

We note, however, that in Homan, we stated that if the payer "had not made payment in full to [the payee]" under the assignment, the payer "could have deducted" the sum necessary to recoup the overpayment. Id. at 96. We also stated that if the payee sued the payer to recover the amount due, the payer "would have been entitled to a setoff in the amount" of the overpayment. Ibid.

Notwithstanding Dr. Vitale's arguments to the contrary, HCAPPA's process for recouping overpayments of claims is not inconsistent with the form

13

of self-help recognized in Homan because when a payer recoups its overpayments, the provider has not been fully paid on all claims. In these circumstances, the payers of claims and the providers are engaged in an ongoing relationship of claims submission and payments.

This relationship generates new claims, which a provider submits for payment, and if all claims have not been paid, payment is not final. A comment to the Restatement notes that "[a] payment that is not yet final is one that may be recovered by legitimate self-help, without reference to either claims or defenses in restitution." Restatement (Third) of Restitution and Unjust Enrichment § 67, cmt. h.

In any event, Dr. Vitale's reliance upon the Restatement and the common law of restitution as a basis for his challenge to the regulations is misplaced. In obtaining reimbursement as permitted by HCAPPA, the payers are not asserting claims for restitution under the common law. They are recouping overpayments pursuant to the specific statutory authorization in HCAPPA.

The provisions of HCAPPA thus abrogate any principle under the common law that would otherwise preclude payers of claims from obtaining reimbursements for their overpayments. A statute like HCAPPA that abrogates the common law must be construed narrowly, but if the language of the statute is clear, the court must enforce the statute "according to its terms."

14

Marshall v. Klebanov, 188 N.J. 23, 37 (2006) (quoting Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 392 (2001)).

Here, the reimbursement provisions of HCAPPA expressly permit payers to obtain recovery of overpayments by offsetting the overpayments against a provider's future claims, and those future claims may include claims related to persons other than the person for whom the overpayments were made. Accordingly, the Department correctly determined that there was no need to clarify the meaning of the terms "offset" and "setoff" used in the regulations.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION