136 N.J. Super. 501 (1975)
347 A.2d 10
THE TRUSTEES OF STRUCTURAL STEEL & ORNAMENTAL IRON WORKERS FUND, THE TRUSTEES OF STRUCTURAL STEEL AND ORNAMENTAL IRON WORKERS PENSION FUND, AND THE TRUSTEES OF SHOPMEN'S LOCAL UNION NO. 545 VACATION FUND, PLAINTIFFS-APPELLANTS,
v.
PETER HUBER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1975.
Decided October 14, 1975.
*502 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. Joseph A. Clarken, Jr., argued the cause for appellants (Messrs. Fox, Schackner, Neagle, Mastrangelo & Gassert, attorneys).
*503 Mr. Charles J. Irwin argued the cause for respondent (Messrs. Irwin and Post, attorneys).
PER CURIAM.
Plaintiffs are trustees of union funds. They filed a complaint against Peter Huber, a resident of the State of New York, and undertook to effect service of process upon him by mailing a copy of the summons and complaint to his usual place of abode in that State pursuant to R. 4:4-4(e). Defendant, appearing specially, moved to dismiss the action or to quash service on the ground that he did not have sufficient contacts in New Jersey to satisfy due process and, therefore, was not subject to service "within or without the State of New Jersey." The judge below, after hearing argument thereon, determined that jurisdiction had not been acquired and entered an order quashing and setting aside the service of process. This appeal followed.
Defendant is president and principal stockholder of Palisade Systems, Inc., a New York corporation. It appears that Palisade had a contract with two New Jersey corporations, New Jersey-Metromodular Systems, Inc., and its wholly-owned subsidiary, Rigid Frame Systems, Inc., for fabrication work at Rigid's Edgewater plant. It also entered into a collective bargaining agreement with certain unions whose members were engaged on that job, under which it was obligated to make contributions to certain funds administered by plaintiffs. Palisade's failure to make the required payments, and plaintiffs' consequent suit against it to recover them led to the filing of the complaint involved herein.
Plaintiffs alleged therein that defendant, by making repeated representations to them through his counsel that any recovery in a suit which Palisade had instituted against a guilty company on a performance bond issue on the Edgewater job would be applied in satisfaction of the moneys owed plaintiffs, prolonged the settlement negotiations being conducted by the parties; that plaintiffs finally obtained a judgment against Palisade and unsuccessfully attempted to *504 satisfy it; that defendant converted to his own use moneys obtained as a result of the suit against the surety company, and that the amount recovered, which was Palisade's sole asset and capable of being applied in satisfaction of plaintiffs' judgment, was diverted by defendant contrary to his representation. In a second count plaintiffs charged defendant with falsely representing that plaintiffs' judgment against Palisade would be satisfied, thus causing them to withhold the entry of judgment and, after its entry, the issuance of execution thereon. The third count alleged that defendant received and applied the funds recovered to his personal benefit; that this transfer was made to hinder, delay and defraud Palisade's creditors, and that defendant effected the transfer, which was without consideration, with the intention of placing Palisade's sole asset beyond the reach of creditors.
In support of his motion to quash service of process defendant generally denied the allegations of the complaint and averred that his only business contact with this State was in his capacity as president of Palisade, and then only with respect to signing the collective bargaining agreement on behalf of the corporation and "responding to plaintiffs' telephone calls for payment."
The trial judge concluded that
* * * I find no contract [sic] by the defendant, Huber, which would subject him to jurisdictions [sic] under the Long Arm Rule of the law of this state. The allegation is that he committed a tort. If he did commit a tort, it was committed in his capacity as President of the corporation. I see no fact indicating that he dealt with the Corporation as his own disregarding the figures [sic] of the corporate entity. That is fiction.
Plaintiffs argue that the trial judge improperly addressed himself to the merits of the case and that the only issue before the court on the motion was whether defendant's contacts within the State were sufficient to permit service of process upon him in another State. We think the argument has merit.
*505 There is no doubt that the complaint, at least in part, if not entirely, spelled out causes of action against defendant for his own allegedly tortious conduct. It is well established that while a director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character, if he directs the tortious act to be done, or participates or cooperates therein, he is personally liable to third persons injured or damaged thereby, even though liability may also attach to the corporation. McGlynn v. Schultz, 95 N.J. Super. 412, 416 (App. Div. 1967), certif. den. 50 N.J. 409 (1967); Sensale v. Applikon Dyeing & Printing Corp., 12 N.J. Super. 171, 175 (App. Div. 1951). Additionally, however, plaintiffs claim in this case that defendant converted corporate assets to his own use, conduct which, if true, was beyond the scope of his duties as a corporate director or officer and further implicated him personally.
In any case, we are not concerned here either with the sufficiency of the complaint or the merits thereof, but rather with whether the allegations of the complaint present a justification for long-arm service. If defendant believes that causes of action are not spelled out in the complaint or that there are no genuine issues of material fact, he may move at the proper time either for a dismissal of the complaint or for summary judgment. Those issues, however, can neither be raised nor resolved on a motion to quash or set aside service of process. On such motion, the issue is whether defendant had certain minimum contacts with this State such that the maintenance of the suit against him and subjecting him to judgment in personam, if he is not present in the forum, does not offend "traditional notions of fair play and substantial justice." This is all that due process requires, International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); and, it should be noted, our long-arm rule allows out-of-state service "to the uttermost limits permitted by *506 the United States Constitution." Avdel Corporation v. Mecure, 58 N.J. 264, 268 (1971).
We conclude from our examination of the record that defendant here had contacts with this State sufficient to meet the constitutional requirement of fairness.
It is not in dispute that Palisade was engaged in business transactions in New Jersey, one of which involved the negotiation and execution of a collective bargaining agreement with certain unions. Defendant insists that his only business contact with New Jersey was as president of Palisades in the signing of that agreement and in subsequently responding to telephone calls for payment. Although we have difficulty accepting his assertion of so limited a contact, we think it was enough in the existing circumstances to support the long-arm service of process. The transactions in which he was involved as president and controlling stockholder of Palisades had substantial incidents in New Jersey, not the least of which was the corporation's contractual obligation to contribute to plaintiffs' funds. If the allegations of the complaint are true, there is a direct connection between the collective bargaining agreement, the signing of which brought defendant into this State, and his subsequent alleged tortious conduct which gave rise to the asserted causes of action. This, in our view, was sufficient to justify jurisdiction. Cf. Avdel Corporation v. Mecure, supra, 58 N.J. at 269.
Reversed and remanded for trial.