290 N.J. Super. 519 (1996)
676 A.2d 172
CITIBANK, N.A., PLAINTIFF,
v.
ESTATE OF JOHN A. SIMPSON, SANDRA B. SIMPSON, AS EXECUTRIX, DEFENDANT/THIRD-PARTY PLAINTIFF/RESPONDENT,
v.
CIRCLE CONSULTING GROUP, INC., CIRCLE PROPERTIES, LTD., MANHATTAN WEST OWNER GROUP, GEORGE L. CADY, JR., ERNEST E. CRAUMER, CAMPBELL T. GERRISH, THOMAS B. MARTIN, BRUCE H. SCHARF, DAVID F. WEST, THOMAS N. KELTNER, JR., AND WIEN, MALKIN & BETTEX, THIRD-PARTY DEFENDANTS/APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1996.
Decided May 23, 1996.
*523 Before Judges PRESSLER, KEEFE and RODRIGUEZ.
Phylis D. Sherman argued the cause for appellants Circle Consulting Group, Inc.; Circle Properties, Ltd.; Manhattan West *524 Owner Group; George L. Cady, Jr.; Ernest E. Craumer; Campbell T. Gerrish; Thomas B. Martin; Bruce H. Scharf; and David F. West (Schekter Rishty Goldstein & Blumenthal, attorneys; Ms. Sherman, of counsel; David Blumenthal, on the brief).
John M. Newman argued the cause for appellants Wien, Malkin & Bettex and Thomas N. Keltner, Jr. (Porzio, Bromberg & Newman, attorneys; Mr. Newman, of counsel; Mitchell I. Weitz and Robert C. Buff, on the brief).
Richard L. Plotkin argued the cause for respondent (Pitney, Hardin, Kipp & Szuch, attorneys; Mr. Plotkin, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Third-party defendants, a group of New York entities and individuals, including a law partnership, appeal on leave granted from an order of the trial court denying their motion pursuant to R. 4:6-2(b) to dismiss the third-party complaint on grounds of lack of jurisdiction over the person. Since we are satisfied that the motion record raises an unresolved factual issue respecting the assertion of long-arm jurisdiction over these parties, we reverse and remand.
Because the motion to dismiss was made prior to discovery, the record before us is sparse. This much, however, appears to be undisputed. In 1986 defendant's decedent, John A. Simpson, a New Jersey resident who died in October 1991, made a highly speculative investment in New York real estate pursuant to terms set forth in a private placement memorandum (PPM). Insofar as we can determine, the form of the investment was the purchase of one of twenty-four offered "units" in a New York general partnership, third-party defendant Manhattan West Owner Group, which was formed for the purpose of acquiring thirty occupied cooperative apartments in two buildings in Manhattan. While each investor obtained title to a specific apartment or apartments, the terms of the partnership agreement allocated to each partner a *525 pro rata interest in all "partnership" property so acquired. The investors constituted the designated owner group. There were also six managing partners of Manhattan West, third-party defendants Cady, Craumer, Gerrish, Martin, Scharf, and West, four of whom reside in New York, one in Connecticut, and one in Florida. The investment had been recommended to Simpson by his financial adviser, third-party defendant Circle Consulting Group, Inc., a Delaware corporation whose only place of business is New York. Five of the managing partners of Manhattan West are alleged to be principals of Circle Consulting. A related New York corporation, Circle Properties, Ltd., provided brokerage services for Manhattan West's acquisition of the apartments.
Simpson's investment required him to purchase two apartments in his name but for the benefit of the partnership. He financed the purchase by two loans from plaintiff Citibank, N.A., totalling $134,460. Simpson himself was neither at the closing of title nor at the closing of the Citibank loan in New York. He had designated the six managing partners as his designated joint and several attorneys-in-fact, and two of them appeared at the closing and executed the documents in his name. Also present at the closing was Manhattan West's attorney, Thomas N. Keltner, Jr., a partner in the New York law firm of Wien, Malkin & Bettex. Keltner executed the closing documents as the borrower's attorney. The law firm and Keltner were also joined as third-party defendants.
When the real estate market, and particularly its tax shelter component, precipitously declined in the late 1980's, Manhattan West was no longer able to meet its obligations. Apparently, Simpson continued to make payments to Citibank on the two notes until his death. His estate thereafter defaulted, and this action by Citibank against the estate to recover the balance due ensued. The estate, claiming fraud, misrepresentation, breach of contract, breach of the attorney-in-fact agreement, breach of fiduciary obligation, legal malpractice and other wrongful acts, filed this third-party complaint against all third-party defendants.
*526 As we have noted, none of the third-party defendants resides or does business or has an ascertainable presence in New Jersey. Defendant, therefore, served process on the corporate and partnership entities by certified mail sent to their respective principal place of business, registered agent, or managing partner at their New York addresses. Defendant served the managing partners of Manhattan West by certified mail addressed to their respective residences, either in New York, Connecticut or Florida. The law firm was also served by personal service pursuant to R. 4:4-4(a)(1) upon one of its partners, John L. Loehr, at his New Jersey residence. Loehr, however, had nothing to do with the Manhattan West representation. All defendants, claiming that they are not subject to an exercise of long-arm jurisdiction by this State in respect of this transaction, unsuccessfully moved for dismissal.
Before addressing the specific jurisdictional issues involved in this appeal, there are several procedural issues we must consider. We do so in light of the general rule that territorial presence in the forum is the basic prerequisite for subjecting a defendant to its in personam judgment. In lieu, however, of actual territorial presence, in personam jurisdiction may be predicated upon the defendant's contacts with the forum provided they meet the standard of minimum contacts, that is, contacts of sufficient moment such that maintenance of the suit in the forum does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). See also Waste Management, Inc. v. Admiral Ins. Co., 138 N.J. 106, 119-120, 649 A.2d 379 (1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995); Lebel v. Everglades Marina, Inc., 115 N.J. 317, 322, 558 A.2d 1252 (1989). That extraterritorial reach is what is known as long-arm jurisdiction. It is also well settled that the requisite quality and quantum of contacts is dependent on whether general or specific jurisdiction is asserted, that is, whether the defendant is subject to any claim that may be brought against him in the forum state whether or not related to or arising out of the *527 contacts themselves, i.e., general jurisdiction, or whether the claim is related to or arises out of the contacts in the forum, i.e., specific jurisdiction. Clearly, a lesser standard is required to sustain the exercise of specific jurisdiction, see, e.g., Lebel, supra, 115 N.J. at 323, 558 A.2d 1252, and the test to be met is whether the defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum state...." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (1985). It is specific jurisdiction that is asserted here, and thus the ultimate question is whether the claim against each of the third-party defendants asserted by the third-party complaint arose out of that party's purposeful conduct in New Jersey in circumstances in which this State's exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. See Lebel, op. cit., supra; Charles Gendler & Co. v. Telecom Equipment Corp., 102 N.J. 460, 472, 508 A.2d 1127 (1986).
In moving for dismissal pursuant to R. 4:6-2(b), third-party defendants each argued that its respective contacts with New Jersey in respect of Simpson's investment failed to meet the minimum contact test as prescribed for the exercise of specific jurisdiction. The trial judge was satisfied from the moving papers that defendant had made sufficient allegations of minimum contacts to warrant its continued prosecution of the third-party complaint. Thus, for example, it was asserted that Simpson had been solicited in New Jersey, that the investment documents had been sent to him in New Jersey for his signature, that he was represented by the law firm at the New York mortgage closing, and that solicitation of New Jersey residents was within the contemplation of Manhattan West, since the PPM contained specific caveats for New Jersey residents as well as for residents of Connecticut, Florida, and Pennsylvania. Third-party defendants deny that Simpson had been solicited at all, claiming that the PPM was sent only to potential investors who requested it and contending further that the only contact with New Jersey, that is, use of the mails, did not constitute a sufficient contact. The law firm *528 denies that it was ever acting as Simpson's attorney and asserts that it had no attorney-client relationship with him or, indeed, any other relationship with him. Simpson's executrix apparently had no personal knowledge of the 1986 transaction. Nor was there any discovery by way of interrogatories or depositions by which she could seek to ascertain Simpson's relationship with any of the third-party defendants, how those relationships came about, what the circumstances were surrounding Simpson's decision to become a Manhattan West investor, or what the actual mechanics for implementing that decision were.
As we understand the record, defendant's legal position in defense of the dismissal motion was two-fold. Relying on its personal service in this State of one of the law firm's partners who resides here, the estate argued first that its acquisition of jurisdiction over the law firm was not dependent on long-arm jurisdiction but rather on territorial presence, rendering the minimum-contacts inquiry irrelevant. It further argued that its allegations respecting the contacts of the other third-party defendants provided an adequate predicate for long-arm jurisdiction despite the dispute raised by those parties respecting the existence, nature, and consequence of those asserted contacts. The trial judge agreed with the estate on both issues. We are satisfied that he erred as to both.
We consider first the jurisdictional significance of personal service in this State of one of the law firm's partners. Defendant relies on R. 4:4-4(a)(5), which provides that service of original process shall be made upon a partnership by personal service upon a general partner pursuant to R. 4:4-4(a)(1). Having made such service upon a general partner in New Jersey, the estate contends that it ipso facto acquired in personam jurisdiction over the New York partnership. Not so. We point out first that R. 4:4-4 does not undertake to define jurisdictional limits. It is rather a mechanical rule that merely prescribes the method of acquiring jurisdiction when constitutional principles of due process of law  not the rule  permit assertion of jurisdiction. That is *529 plain from the structure of the rule as amended effective September 1994. Thus paragraph (a) of the revised rule addresses the manner of personal service on individuals and entities who have a territorial presence in this State, that is, those who are subject to the State's exercise of in personam jurisdiction on the fundamental predicate of their being here. That predicate alone satisfies due process requirements, and no further inquiry need be undertaken. Paragraph (b) of the revised rule addresses the mechanics by which in personam jurisdiction may be obtained by constructive or substituted services over those individuals and entities who are not present in the state but who, as a matter of due process of law, are subject to the exercise of its long-arm jurisdiction. The rule prescribes how they shall be served. Constitutional principles determine whether that service is effective for obtaining jurisdiction. The rule's express caveat in respect of long-arm jurisdiction has always been the consistency of its exercise with due process, a caveat now spelled out in R. 4:4-4(b)(1).[1] Clearly then, since the law firm is a New York partnership and does not do business in New Jersey,[2] it is paragraph (b) of the rule, namely the long-arm jurisdiction provision, that applies and not paragraph (a).
Our conclusion rests not only on our parsing of the service rule but, more fundamentally, on the nature of a partnership as a juridical entity having an existence separate from that of the partners. See, e.g., Eule v. Eule Motor Sales, 34 N.J. 537, 545, 170 A.2d 241 (1961); X-L Liquors v. Taylor, 17 N.J. 444, 456-457, 111 A.2d 753 (1955); Schultz v. Ziegenfuss, 105 N.J. Super. 468, 471, 253 A.2d 180 (App.Div. 1969). Plainly, a foreign corporation *530 or unincorporated association would not be subject to this State's in personam jurisdiction merely because a person authorized to receive service on its behalf happened to be present in this State and was personally served here. See Nehemiah v. Athletics Congress of U.S.A., 765 F.2d 42, 47 (3rd Cir.1985). We are convinced that the same is true in respect of a foreign partnership. Indeed, that is the Restatement rule. Thus Restatement (Second) of Conflict of Laws § 40 (1971), dealing with jurisdiction over partnerships and other unincorporated associations, explains as follows in comment b:
If the partnership or other unincorporated association is subject to suit in its firm or common name, the state may exercise judicial jurisdiction over it under such circumstances as would justify the exercise of jurisdiction over an individual....

The mere presence of one of the partners or members in the state is not a sufficient basis for the exercise of judicial jurisdiction over the partnership or association. [Emphasis added.]
Although the issue has not been addressed in a reported opinion in this jurisdiction, we are persuaded of the correctness of the Restatement rule. New Jersey typically gives considerable weight to Restatement views, and has, on occasion, adopted those views as the law of this State when they speak to an issue our courts have not yet considered. See, e.g., H. John Homan Co. v. Wilkes-Barre, 233 N.J. Super. 91, 98, 558 A.2d 42 (App.Div. 1989); Dziedzic v. St. John's Cleaners & Shirt Laund., Inc., 99 N.J. Super. 565, 573, 240 A.2d 697 (App.Div. 1968), rev'd on other grounds, 53 N.J. 157, 249 A.2d 382 (1969); A. v. M., 74 N.J. Super. 104, 118-119, 180 A.2d 541 (Cty.Ct. 1962). We do so now, fully endorsing and adopting the principle stated in comment b.
We add, however, this caveat. Here, the partner who was served in New Jersey, John L. Loehr, himself had had no contact with the transaction that is the subject of the third-party complaint. The matter might well be different if the partner who resided in and was personally served in New Jersey had been third-party defendant Keltner. That is to say, the conduct of each partner binds the partnership. Thus, if the partner whose conduct is the basis of the claim against the partnership were subject *531 to personal service in this State, then service upon that partner would effect jurisdiction over the partnership. As articulated by Donatelli v. National Hockey League, 893 F.2d 459, 466 (1st Cir.1990),
the activities of the partner are generally attributed to the partnership and jurisdiction over the partnership follows from the partner's contacts, if sufficient, regardless of the absence of independent contacts between the partnership qua entity and the forum.
Accord Johnson v. Shaines & McEachern, PA, 835 F. Supp. 685, 689 (D.N.H. 1993); Schmidt v. Wilbur, 775 F. Supp. 216, 221 (E.D.Mich. 1991); Oxford Mall Co. v. K & B Mississippi Corp., 737 F. Supp. 962, 964 (S.D.Miss. 1990). Since, however, the law firm's partner who was personally served in New Jersey engaged in no conduct related to the transaction in controversy, we need not address the issue further.
We consequently hold that in personam jurisdiction over third-party defendant law firm was not obtained by personal service in New Jersey on a partner having no connection with the subject representation. Whether the law firm can be sued here by an exercise of long-arm jurisdiction depends, therefore, as in the case of all other third-party defendants, on whether, as a matter of fact and of law, its contacts in this jurisdiction were sufficient to support its acquisition of specific jurisdiction.
That is the question we next consider, and we conclude that the record on the motion is inadequate to permit us to make that determination. As we have explained, defendant alleged a number of facts that, if undisputed or established, might well support an exercise of long-arm jurisdiction against these third-party defendants. The problem is that most of these facts or their import were disputed by certifications supporting the motion to dismiss. The trial judge, without an evidential hearing or fact-finding to resolve the dispute, simply gave defendant the benefit of its allegations. This was error. The jurisdictional facts had to be found in order for the jurisdictional decision to be made and hence defendant's right to proceed determined.
*532 We first note that the court's error appears to have been attributable to a misreading of Trustees Structural Steel v. Huber, 136 N.J. Super. 501, 505, 347 A.2d 10 (App.Div. 1975), certif. denied, 70 N.J. 143, 358 A.2d 190 (1976), in which we said, in reviewing an order dismissing for lack of jurisdiction, "[i]n any case, we are not concerned here either with the sufficiency of the complaint or the merits thereof, but rather with whether the allegations of the complaint present a justification for long-arm service." We were, however, not there dealing with disputed jurisdictional allegations. Hence the jurisdictional allegations alone permitted resolution of the issue. When, however, they do not, as here, the facts must be found. The point is that some allegations go to jurisdiction and others go to the cause of action. When a motion to dismiss for lack of jurisdiction is made, it is only the jurisdictional allegations that are relevant, not the sufficiency of the allegations respecting the cause of action. We attempted to make this clear in Washington v. Magazzu, 216 N.J. Super. 23, 26, 522 A.2d 1013 (App.Div. 1987), in which we decided only the jurisdictional issue despite defendant's having attempted to intertwine that challenge with a challenge to the sufficiency of the cause of action. We there said "[w]e must accept these allegations as true and the claim as valid for the purposes of this appeal because the motion to dismiss was directed solely to the jurisdiction of the court, and not to the merits of the claim." The "allegations" to which we were referring were clearly those relating to the cause of action and not those relating to jurisdiction. Jurisdictional allegations cannot be accepted on their face if they are disputed.
The question of in personam jurisdiction is a mixed question of law and fact that, if timely raised, must be resolved before the matter may proceed, and if it cannot be resolved on pleadings and certifications, it must be resolved by a preliminary evidential hearing after affording the parties an appropriate opportunity for discovery. See, e.g., Meeker v. Meeker, 52 N.J. 59, 72, 243 A.2d 801 (1968); Corporate Dev. Spec. Inc. v. Warren-Teed *533 Pharm., 99 N.J. Super. 493, 240 A.2d 450 (App.Div. 1968); First National Bank of Freehold v. Viviani, 60 N.J. Super. 221, 224-225, 158 A.2d 704 (App.Div. 1960). And see R. 4:6-3.
We also think it plain that in the circumstances here, it is the third-party plaintiff who bears the burden of proof on the question of the adequacy of the third-party defendants' contacts to sustain an exercise of specific jurisdiction. We are aware that lack of jurisdiction is an affirmative defense and that ordinarily the party relying on the defense has the burden of establishing it. See, e.g., Pagano v. United Jersey Bank, 276 N.J. Super. 489, 500, 648 A.2d 269 (App.Div. 1994), affirmed, 143 N.J. 220, 670 A.2d 509 (1996); Rendine v. Pantzer, 276 N.J. Super. 398, 435, 648 A.2d 223 (App.Div. 1994), aff'd as modified, 141 N.J. 292, 661 A.2d 1202 (1995). We have, however, no doubt that it is the party asserting the adequacy of defendant's contacts to support specific jurisdiction who bears the burden of persuasion on that issue. See, so holding, Catalano v. Lease & Rental Mgmt., 252 N.J. Super. 545, 547, 600 A.2d 184 (Law Div. 1991). Conceptually, the matter is analogous to application of the discovery rule by which the accrual date of the cause of action is deferred. Ordinarily, the party relying on the defense of the statute of limitations has the burden. But, as made clear by Lopez v. Swyer, 62 N.J. 267, 275-276, 300 A.2d 563 (1973), it is the party relying on the indulgence of the discovery rule for relief from strict application of the statute of limitations who bears the burden of proving his entitlement thereto. So here. Once third-party defendants have shown that they have no territorial presence in this state, the burden shifts, as it were, to third-party plaintiff, who must then demonstrate their amenability, nonetheless, to an exercise of in personam jurisdiction based on minimum contacts.
We make this final observation in respect of the evidential hearing for which we remand. It is, in our view, plain that mere use of the mail to transmit transactional documents is not by itself a sufficient contact with this state to justify its exercise of long-arm jurisdiction. Pfundstein v. Omnicom Group, Inc., 285 *534 N.J. Super. 245, 251, 666 A.2d 1013 (App.Div. 1995). On the other hand, purposeful, persistent and direct solicitation of New Jersey residents, in the context of the totality of the circumstances, might constitute such purposeful availment as would suffice. See Lebel v. Everglades Marina, Inc., 115 N.J. 317, 558 A.2d 1252 (1989). The PPM that was the basis of the investment was apparently drafted with the intention that New Jersey residents be solicited. New Jersey securities law was referenced. Many months passed between decedent's first introduction to the investment opportunity in Manhattan West and its consummation. There were presumably contacts between Simpson and third-party defendants during that time whose explication might be helpful.
Defendant must be given a reasonable opportunity to explore, through discovery, the nature of the solicitation of decedent, the nature of his business and fiduciary relationships with third-party defendants, and the facts surrounding the inception and conduct of these relationships. We leave to the trial judge the expeditious scheduling of necessary discovery and an ensuing evidential hearing.
The order appealed from is reversed, and we remand to the trial court for further proceedings consistent with this opinion.
NOTES
[1] Paragraph (c) of the revised rule, not relevant here, provides for optional mailed service, effective only if an answer is filed and served within sixty days.
[2] We think it plain that the fact, as asserted by defendant, that a partner and several associates of the firm are also admitted to practice in New Jersey does not by itself constitute the firm's doing business here unless those attorneys undertake representation of clients in New Jersey on behalf of the firm, a fact not alleged by the estate.