**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2044-20

IAN CRESPI,

     Plaintiff-Respondent,

v.

VAPE ZEPPY, MICHAEL
EILYUK, EDWARD VINOKUR,
CCM CUSTOMS, INC., and
TED A. BURKHALTER, JR.,

     Defendants,

and

SOCIALITE E-CIGS, LLC,
THOMAS OTTOMBRINO,
MAYVILLAGE TRADING, LLC,
and TIANGANG YU,

     Defendants-Respondents,

and

LG CHEM, LTD.,

     Defendant-Appellant.

_____

Argued March 2, 2022 – Decided March 18, 2022

Before Judges Gilson and Gummer.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5099-17.

Rachel Atkin Hedley (Nelson Mullins Riley & Scarborough, LLP) of the South Carolina and New York bars, admitted pro hac vice, argued the cause for appellant (Lewis Brisbois Bisgaard & Smith, LLP, and Rachel Atkin Hedley, attorneys; James S. Rehberger, of counsel and on the briefs; Rachel Atkin Hedley, on the briefs).

Rachel E. Holt argued the cause for respondent Ian Crespi (Rebenack, Aronow & Mascolo, LLP, attorneys; Craig M. Aronow, of counsel and on the brief; Rachel E. Holt, on the brief).

Murray A. Klayman, attorney for respondents Socialite E-Cigs, LLC and Thomas Ottombrino, join in the brief of respondent Ian Crespi.

Kennedys, LLP, attorneys for respondents Mayvillage Trading, LLC and Tiangang Yu, join in the brief of respondent Ian Crespi.

PER CURIAM

By leave granted, defendant LG Chem, Ltd. (LG Chem), a South Korean company headquartered in Seoul, South Korea, appeals from an order denying LG Chem's motion to dismiss plaintiff Ian Crespi's product-liability complaint, N.J.S.A. 2A:58C-1 to -11, for insufficient service of process and lack of

personal jurisdiction and an order denying its subsequent motion for reconsideration. We reverse and remand for further proceedings.

I.

Plaintiff, a New Jersey resident, filed a complaint against LG Chem and others alleging he was injured on December 14, 2016, when a CCM Customs, Inc. 7.62 Mod vaporizer (vape), which he had purchased from defendant Vape Zeppy in New Jersey in October 2016, or the lithium ion battery it contained exploded in his face. Plaintiff identified the battery used in his vape as "Model MXJO 18650F 3000mah 35A high drain rechargeable flat top battery, Serial #H04312" and alleged it was manufactured by MXJO Tech, a company located in Shenzhen, China, or by LG Chem. According to plaintiff, LG Chem is in the business of "designing, manufacturing, constructing, assembling, inspecting and selling" batteries used in vape products. Plaintiff alleges LG Chem distributed the vape or manufactured and distributed the lithium ion battery that injured him. Plaintiff attempted to serve process on LG Chem in Michigan by delivering a copy of the summons and complaint to Jeremy Hagemeyer, the human-resources director of LG Chem Michigan, Inc. (LGCM), a Delaware corporation with its principal place of business located in Michigan that is one of LG Chem's United States-based subsidiaries.

3

LG Chem moved to dismiss plaintiff's complaint for insufficient service of process and lack of personal jurisdiction pursuant to Rule 4:6-2(d) and (b). In support of its motion, LG Chem submitted a certification by Hagemeyer, stating he is authorized to accept service only on behalf of LGCM, and if he had known the papers he had accepted were intended for LG Chem, he would not have accepted them.

LG Chem also submitted a certification by Joon Young Shin, a "Team Leader and authorized representative" of LG Chem, averring LG Chem "is not registered to do business" in New Jersey and does not have in New Jersey an office, any employees, "a registered agent for service of process," any leased or owned real property, a telephone number, a post-office box, a mailing address, or a bank account. Further, Shin certified that although LG Chem "manufacture[s] 18650 lithium ion cells for use in specific applications by sophisticated companies," it "does not design, manufacture, distribute, advertise, or sell 18650 lithium-ion battery cells for use by individual consumers as replaceable, rechargeable batteries in electronic cigarette devices" and "does not design or manufacture 18650 lithium ion cells for sale to individual consumers to use as standalone, replaceable batteries." According to Shin, LG Chem does not "design, manufacture, distribute,

advertise, or sell" the "MXJO" brand lithium ion battery cells identified in the complaint and did not authorize or approve the re-wrapping of its cell in an "MXJO" exterior wrapping. Additionally, Shin certified LGCM "is a separate legal entity from [LG Chem] and has its own corporate offices and maintains a separate and independent corporate existence," is not "a general agent" or an "agent . . . for service of process" of LG Chem, and "is not authorized to accept service of process on behalf of LG Chem."

Plaintiff opposed the motion, asserting service on Hagemeyer was sufficient because LGCM was acting as LG Chem's agent and alter ego and that the court had general and specific jurisdiction over LG Chem because LG Chem operated in New Jersey and knew its product would end up in New Jersey.

The judge denied the motion and set forth the following facts in a written opinion:

> This is a product liability action in which plaintiff alleges to have been injured on December 14, 2016 when his e-cigarette/vape device malfunctioned while he was using it with an "MXJO" lithium ion battery purchased in New Jersey from co-defendant Vape Zeppy and manufactured by [LG Chem]. [LG Chem] is a South Korean company with its headquarters and principal place of business in Seoul, South Korea, and subsidiaries in sixteen different countries. [LG Chem] is a global supplier of a wide

A-2044-20

range of products, including "18650 lithium ion battery cells." Plaintiff alleges causes of action against [LG Chem] for violations of the New Jersey Products Liability Act, strict liability, negligence, and breach of implied and express warranty.

Among [LG Chem's] subsidiaries are LG Chem America, Inc. ("LGCA") and LG Chem Michigan, Inc. ("LGCM"). LGCA is a Delaware corporation with its principal place of business in Atlanta, Georgia, which was relocated from Englewood Cliffs, New Jersey in 2015. LGCM is [LG Chem's] wholly-owned, direct subsidiary in North America. LGCM is a Delaware corporation and its principal place of business is in Michigan. LGCM's work is limited exclusively to manufacture of automotive batteries. LG Electronics USA, Inc. ("LGEUSA"), a subsidiary of LG Electronics, Inc., is a Delaware corporation with its principal place of business in Englewood Cliffs, New Jersey, where LGEUSA is currently in the process of constructing a new corporate Headquarters. On January 23, 2020, a process server attempted to effect personal service of process upon Jeremy Hagemeyer, Director of Human Resources for LGCM. Mr. Hagemeyer was met by the process server in the lobby of LGCM's offices in Michigan. Mr. Hagemeyer was handed an envelope labeled "LG Chem" and asked to sign a form acknowledging receipt.

Apparently based on those facts and citing Mills v. Ethicon, Inc., 406 F. Supp. 3d 363 (D.N.J. 2019), and an unpublished federal trial court case, the judge held service on Hagemeyer was "sufficient," finding

LGCM, a domestic subsidiary of [LG Chem], acts essentially as an alter ego of [LG Chem] for the purposes of service of process. LGCM served as a

6

conduit for the activities of [LG Chem] and exists to act as an instrumentality for the production of one of [LG Chem's] major products within the US.

The judge also was "satisfied that plaintiff has met his burden of establishing that [LG Chem] is subject to specific jurisdiction in New Jersey." The judge based that holding on the following analysis:

> Despite [LG Chem's] contention that third parties have repackaged [LG Chem's] products for sale to New Jersey without authorization, this matter is not the first involving an LG Chem battery exploding and injuring a New Jersey resident. It can reasonably be concluded that plaintiff's injury would not have arisen had [LG Chem] not placed its faulty batteries into the stream of commerce to New Jersey. It does not offend traditional notions of fair play and substantial justice to find [LG Chem] subject to personal jurisdiction in New Jersey.

In a written opinion, the judge denied LG Chem's subsequent motion for reconsideration, stating he was "satisfied" his "analysis" of Mills, 406 F. Supp. 3d at 393, "demonstrates that LGCM acted as an alter ego of LG Chem and that it was not impalpably incorrect to make the determination that one of LGCM's sole purposes of being in the United States is to act as an instrumentality for the production of LG Chem's major products." The judge denied the reconsideration motion as to his specific-jurisdiction decision, holding his decision "satisfied the standard to support a finding of specific

7

jurisdiction in the state of New Jersey because [LG Chem's] product was purposely in New Jersey and caused an injury."

## II.

In this appeal, LG Chem argues the judge erred in denying its motion to dismiss for insufficient service of process. LG Chem acknowledges an exception to the Hague Service Convention (HSC) rule on service – New Jersey permits service on a wholly-owned subsidiary of a foreign corporation if the subsidiary is an alter ego or agent of the parent – but faults the judge for failing to support with any facts or evidence his conclusion that LGCM was the alter ego of LG Chem. LG Chem also argues the judge erred in finding plaintiff had established LG Chem was subject to specific jurisdiction in New Jersey because plaintiff's claims did not arise out of or relate to contacts LG Chem had formed with New Jersey.

## A.

Proper service of process is a "prerequisite[]" to a court's "exercise of in personam jurisdiction." Omni Cap. Int'l v. Rudolph Wolff & Co., 484 U.S. 97, 98 (1987); see also Mills, 406 F. Supp. at 391-92 ("In the absence of service of process . . . due process will not permit a court to exercise power over a party named as defendant in the complaint."). "It is elementary that service must be

accomplished in accordance with the pertinent rules in such a way as to afford 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 425 (App. Div. 2003) (quoting Davis v. DND/Fidoreo, Inc., 317 N.J. Super. 92, 97 (App. Div. 1998)).

For entities based in signatory countries to the Hague Convention, the Hague Convention is generally "the supreme law of the land . . . overrid[ing] state methods of service that are objectionable to the nation in which the process is served." Gapanovich v. Komori Corp., 255 N.J. Super. 607, 611 (App. Div. 1992). "However, if local law permits local service obviating the need for foreign service, the Hague Convention is inapplicable." Id. at 611-12. Rule 4:4-4(a)(6) provides that personal jurisdiction can be obtained over a foreign corporation by "serving a copy of the summons and complaint . . . on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation." Generally, "[s]ervice of a summons and complaint upon a subsidiary is not sufficient service on a parent corporation." Charles Gendler & Co. v. Nippon Elec. Co., 199 N.J. Super. 227, 240-41 (App. Div. 1985),

9

rev'd on other grounds sub nom. Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460 (1986). However, "[u]nder New Jersey law, service on a wholly owned subsidiary confers jurisdiction over the foreign parent . . . [if and] only if the subsidiary is an alter ego or agent of the parent." Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 513 (D.N.J. 2008); see also Mills, 406 F. Supp. 3d at 393.

To determine "whether a subsidiary is acting as an agent of the parent, the court must consider four factors":

> (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; . . . (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies.
>
> [Mills, 406 F. Supp. 3d at 393 (quoting Dewey, 558 F. Supp. 2d at 513).]

That an employee, other than an officer, director, trustee or managing or general agent, accepted service does not establish the employee was authorized to accept service. Jameson, 363 N.J. Super. at 429.

To determine "whether a subsidiary is an alter ego of its parent, the court must consider whether 'the parent so dominated the subsidiary that it had no

10

separate existence but was merely a conduit for the parent.'" Mills, 406 F. Supp. 3d at 393 (quoting Dep't of Env'l Prot. v. Ventron Corp., 94 N.J. 473, 501 (1983)). To determine if a plaintiff has demonstrated such "corporate dominance," a court must engage "in a fact-specific inquiry considering whether the subsidiary was grossly undercapitalized, the day-to-day involvement of the parent's directors, officers and personnel, and whether the subsidiary fails to observe corporate formalities, pays no dividends, is insolvent, lacks corporate records, or is merely a facade." Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 200 (App. Div. 2006). The court may also consider "common ownership, financial dependency, interference with a subsidiary's selection of personnel, . . . and control over a subsidiary's marketing and operating policies." FDASmart, Inc. v. Dishman Pharm. & Chems. Ltd., 448 N.J. Super. 195, 204 (App. Div. 2016) (quoting Pfundstein v. Omnicom Grp., Inc., 285 N.J. Super. 245, 253-54 (App. Div. 1995)). That is the analysis the judge should have performed, but did not perform, in deciding whether LGCM was an alter ego of LG Chem.[1]

---

[1] We reject defendant's legally-unsupported argument that different standards exist for determining whether a subsidiary is an alter ego of its parent corporation. The status of a subsidiary as an alter ego does not change depending on the reason for the analysis.

Without engaging in that fact-specific analysis, the motion judge held service on Hagemeyer was "sufficient" to constitute service on LG Chem because Hagemeyer's employer, LGCM, a Delaware company based in Michigan with no alleged ties to New Jersey, "acts essentially as an alter ego of [LG Chem]." He found LGCM was LG Chem's alter ego because "LGCM served as a conduit for the activities of [LG Chem] and exists to act as an instrumentality for the production of one of [LG Chem's] major products within the [United States]."

The judge's decision is devoid of any finding that LG Chem "so dominated" LGCM that LGCM had "no separate existence" from LG Chem, and any factual findings that would support a conclusion LG Chem "so dominated" LGCM that LGCM had "no separate existence." Mills, 406 F. Supp. 3d at 393 (quoting Ventron, 94 N.J. at 501). His conclusory finding that LGCM served as LG Chem's "conduit" and "instrumentality" with nothing more is not enough to render service of process on LGCM the equivalent of service of process on LG Chem. The judge's description of LGCM matches that of practically any corporate subsidiary, but simply being a subsidiary is not enough to establish proper service on the parent. Cintron v. W & D Mach. Co., 182 N.J. Super. 126, 131 (Law Div. 1981) ("[T]he mere existence of a

parent-subsidiary relationship does not validate service upon a subsidiary to reach the parent under a long-arm statute or rule."). The judge failed to engage in the "fact-specific inquiry," Verni, 387 N.J. Super. at 200, necessary to determine whether LG Chem exercised such corporate dominance over LGCM that renders it fair, under our notions of due process, to find LG Chem should have expected to be haled into a New Jersey court based on service on LGCM.

Accordingly, we reverse the judge's order denying plaintiff's motion to dismiss for insufficient service of process. At oral argument, LG Chem's counsel urged us to make the factual findings necessary to decide this issue. That we cannot do. Instead, we remand the case so that the motion judge, guided by these principles, can perform the fact-specific inquiry required to render a decision on this issue.

B.

We address the motion judge's decision on specific jurisdiction in the event he reaches that issue on remand.

"A fundamental question in every legal action is whether a given court has jurisdiction to preside over a given case. Absent personal jurisdiction over the parties, a judge has no authority to proceed." Dutch Run-Mays Draft, LLC v. Wolf Block, LLP, 450 N.J. Super. 590, 595 (App. Div. 2017). "The

13

question of in personam jurisdiction is a mixed question of law and fact that . . . must be resolved before the matter may proceed . . . ." Citibank, N.A. v. Est. of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996); see also Rippon v. Smigel, 449 N.J. Super. 344, 359 (App. Div. 2017).

We will not disturb a trial court's factual findings concerning jurisdiction if they are supported by substantial, credible evidence. Rippon, 449 N.J. Super. at 358. We review de novo the legal aspects of personal jurisdiction. Ibid. "[W]e are not bound by a trial court's interpretations of the legal consequences that flow from established facts." State v. Dorff, 468 N.J. Super. 633, 644 (App. Div. 2021).

"A defendant may move to dismiss a complaint on the ground of 'lack of jurisdiction over the person.'" Rippon, 449 N.J. Super. at 358 (quoting R. 4:6-2(b)). A plaintiff bears the burden of pleading sufficient facts to establish jurisdiction. Dutch Run-Mays Draft, 450 N.J. Super. at 598. "Presented with a motion to dismiss on the basis of lack of jurisdiction, a trial court must make findings of the 'jurisdictional facts,' because disputed 'jurisdictional allegations cannot be accepted on their face . . . .'" Rippon, 449 N.J. Super. at 359 (quoting Citibank, 290 N.J. Super. at 532). "If the pleadings and certifications submitted to the trial court do not permit resolution of the jurisdictional

question, the trial court must conduct a 'preliminary evidential hearing after affording the parties an appropriate opportunity for discovery.'" Ibid. (quoting Citibank, 290 N.J. Super. at 532).

"When a defendant has maintained continuous and systematic activities in the forum state, the defendant is subject to the state's 'general' jurisdiction on any matter, irrespective of its relation to the state." Id. at 358-59 (quoting Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989)). Here, the motion judge did not find LG Chem is subject to general jurisdiction in New Jersey. Moreover, the current record does not contain facts that would establish general jurisdiction over LG Chem in New Jersey.

"[W]hen the cause of action arises directly out of a defendant's contacts with the forum state, the state may exercise 'specific' jurisdiction over a defendant who has 'minimum contacts' with the state." Id. at 359 (quoting Lebel, 115 N.J. at 322). A plaintiff must prove a defendant's contacts are adequate to establish specific jurisdiction. Id. at 360. But "[a] court should only expect a prima facie showing of sufficient contacts '[i]n the early stages of a proceeding . . . .'" Ibid. (second alteration in original) (quoting Jacobs v. Walt Disney World Co., 309 N.J. Super. 443, 454 (App. Div. 1998)). Nonetheless, "[a] conclusion of specific jurisdiction requires that the

'purposeful acts by the [defendant] directed toward this State' be of a kind that 'make[s] it reasonable for the [defendant] to anticipate being haled into court here.'" Id. at 360-61 (second, third, and fourth alterations in original) (quoting Mastondrea v. Occidental Hotels Mgmt. S.A., 391 N.J. Super. 261, 268 (App. Div. 2007)).

Applying these principles, we are convinced the record was not sufficiently developed for the judge to conclude, as he did, that LG Chem was subject to specific jurisdiction in New Jersey. LG Chem alleged several facts that, if undisputed or established, support its claim New Jersey lacked personal jurisdiction. Plaintiff disputed LG Chem's facts and their import in his submissions opposing the motion. Instead of affording jurisdictional discovery and conducting an evidentiary hearing to resolve the disputed jurisdictional allegations, the judge made factual findings with inferences in the light most favorable to plaintiff, the non-moving party. See R. 4:46-2. That was error. "The jurisdictional facts had to be found in order for the jurisdictional decision to be made and hence defendant's right to proceed determined." Citibank, 290 N.J. Super. at 531.

Like the motion judge in Citibank, the judge, "without an evidential hearing or fact-finding to resolve the dispute, simply gave [plaintiff] the

16

benefit of [his] allegations." Ibid. The motion judge based his specific-jurisdiction holding on his findings that "this matter is not the first involving an LG Chem battery exploding and injuring a New Jersey resident" and "plaintiff's injury would not have arisen had [LG Chem] not placed its faulty batteries into the stream of commerce to New Jersey." Those findings were not "supported by substantial, credible evidence," Rippon, 449 N.J. Super. at 358, and certainly not by evidence of "purposeful acts by the [defendant] directed toward this State," Mastondrea, 391 N.J. Super. at 268. See also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., ___ U.S. ___, 141 S. Ct. 1017, 1024 (2021) (for a defendant to be subject to a state's specific jurisdiction, the defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State" (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958))). Accordingly, we reverse the motion judge's decision as to specific jurisdiction. If the motion judge reaches the issue of specific jurisdiction on remand, the judge must provide a schedule for the parties to conduct jurisdictional discovery, conduct an evidentiary hearing after that discovery is completed, and then make findings of jurisdictional facts to support a decision and properly adjudicate the motion.

17

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2044-20