**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1696-23

IN THE MATTER OF THE
ESTATE OF MARIANNE
CANOVA, deceased.

_____

Submitted October 16, 2025 – Decided February 5, 2026

Before Judges Smith and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. P-228049-23.

Joseph A. Mecca, Esq., PC, attorney for appellant Estate of Marianne Canova (Joseph A. Mecca, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent State of New Jersey (Donna Arons, Assistant Attorney General, of counsel; Eileen W. Siegeltuch, Deputy Attorney General, on the brief).

Mandelbaum Barrett PC, attorneys for respondent Mario Cinelli (Jeffrey J. Trapanese, on the brief).

PER CURIAM

Appellant the Estate of Marianne Canova joined by the Attorney General seek the reversal of a December 29, 2023 order from the Chancery Division, Probate Part, denying the Attorney General's motion for summary judgment and granting summary judgment and attorney's fees to Marianne Canova's son, Mario Cinelli. Appellants contend that the trial court erred when it reformed Ms. Canova's 2019 will to conform to the terms of a property settlement agreement (PSA) incorporated into a 1978 final judgment of divorce between Ms. Canova and her then-spouse, Lawrence J. Cinelli. We agree; consequently, we reverse and enter judgment for the Estate and the Attorney General for the reasons which follow.

I.

Marianne Canova (Marianne) and Lawrence Cinelli (Lawrence) were married September 20, 1970. They had two children, Mario and Genio, and the family resided in a home on Woodcliff Avenue in Little Falls. By 1976, Marianne and Lawrence were in the throes of a divorce, and they entered into a PSA on November 17. The PSA included two equitable distribution paragraphs which controlled disposition of the marital home.

Paragraph 5 of the PSA required Lawrence to "deliver possession and convey to [Marianne] by bargain and sale deed all of his right, title, and interest, including his inchoate right of curtesy, in and to the [marital home]."

Paragraph 6, in turn, provided that

> [i]n the event of a divorce, [Marianne] agrees that[,] in the event that she intends to remarry, she shall, prior to said remarriage, sell and convey the aforesaid premises. The [n]et proceeds shall be distributed one-half to [Marianne] and the other one-half to be placed in a trust fund for the two children of the parties. In the event that the property is sold at any time, the net proceeds shall be also so distributed.

The PSA also entitled Marianne "to all rents from the property[,]" however she was "responsible for all expenses, including, but not limited to, mortgage, taxes, insurance, utilities, maintenance and repairs." The PSA was incorporated into the March 20, 1978 final judgment of divorce.

More than forty-one years later, on August 9, 2019, Marianne executed a will. In the will she expressly disinherited her two sons and her brother, Joseph Canova, "for personal reasons well-known to them." She also appointed her attorney Joseph A. Mecca as executor and left the entire estate to St. Jude Children's Research Hospital. Marianne died on August 12, 2022, without ever having remarried. She lived in the former marital residence on Woodcliff

3

Avenue until her death. The Passaic County Surrogate probated her will on August 25, 2022, and Mario received notice of probate on September 15.

Shortly thereafter, on December 9, 2022, Mario filed a complaint in the Chancery Division, Probate Part, seeking to reform his mother's will to comply with the PSA, requiring that, upon the property's sale, one-half of the proceeds would be divided equally between him and his brother Genio. Mario argued that at the time his mother executed her will in 2019, she was operating under both a mistake as to the contents of the will and a mistake in the inducement. Mario identified certain interested parties in his complaint: Mecca, the executor of Marianne's estate; Genio, his brother; Joseph Canova, Marianne's brother; St. Jude, the sole beneficiary of the will; and the New Jersey Office of the Attorney General.

Mecca sold the former marital home on February 24, 2023 for $355,000. The title company held $148,098.72 in escrow pending the resolution of this litigation. The parties cross-moved for summary judgment, with Mario also seeking counsel fees pursuant to Rule 4:42-9(a)(2).

The trial court heard argument on December 9 and 11, 2023, and granted summary judgment for Mario. Focusing on the parties' competing interpretations of the PSA, the court found: the PSA's terms were unambiguous;

A-1696-23

the plain language of paragraphs five and six of the PSA called for distribution of one-half of the proceeds of the sale to Mario and Genio, either prior to her re-marriage or, if she did not remarry, at the time of the sale of the marital home; nothing in the PSA restricted the time period for distribution of one-half of the home sale proceeds to the sons; and the intent of the parties as expressed in the terms of the PSA was to "safeguard the interest[s]" of Mario and Genio in the home which had been conveyed to Marianne. The court further found that Marianne's intent as expressed in her will was not germane to its analysis. It stated:

> The question in this case is really whether the [t]estator had the ability to convey 100% of that real property. The answer to that question is that she did not. It doesn't require an interpretation of the Will. It requires an interpretation of the [PSA] to determine who owned the property and whether there were conditions on the ownership of the property. There were conditions on the ownership of the property. The agreement says if the property is sold at anytime, and that literally means at anytime, and that's what happened here, the property was sold after the decedent's death. The children are entitled to their one-half interest.

The court then granted Mario Cinelli's counsel fee application but placed no Rule 1:7-4 findings on the record to support its order. The trial court's December 29, 2023 order reformed Marianne's will according to the terms of the PSA. The order then directed the title company to disburse $74,049.36 each

5

to Mario and Genio. The order also awarded Mario $21,593.46 in attorney's fees.

The trial court granted a stay of the order pending appeal. Before us, the Estate and the Attorney General argue that the trial court erred by improperly: interpreting the PSA, including not considering certain equitable principles; reforming the will, and awarding counsel fees to Mario. The Attorney General also argues that the trial court erred when it failed to find that Mario had proven his mistake in the inducement theory by clear and convincing evidence.

## II.

In reviewing a court's decision to grant or deny a motion for summary judgment, we apply the same standard governing the trial courts. In re Est. of Jones, 259 N.J. 584, 594 (2025). Under these standards, courts should grant a motion for summary judgment if they find that "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "When no issue of fact exists, and only a question of law remains, [appellate courts] afford[] no special deference to the legal determinations of the trial court." Boyle v. Huff, 257 N.J. 468, 477 (2024) (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)).

A-1696-23

III.

Both the Attorney General and the Estate contend that the trial court's order reforming Marianne Canova's will is premised on an erroneous interpretation of the PSA, as the court failed to apply equitable considerations to its analysis. We consider the relevant jurisprudence.

The Probate Part has jurisdiction over matters "that relate to proceedings to probate wills and to settle questions that concern or touch on a decedent's estate." In re Est. of Stockdale, 196 N.J. 275, 301 (2008). "[I]f a will has already been admitted to probate, it may be challenged by the timely filing of a complaint in the Probate Part." Id. at 302 (citing R. 4:85-1). The Probate Part has the legal authority to reform wills. Normally, "[t]he intention of a testator as expressed in [the] will controls the legal effect of . . . dispositions, and the rules of construction . . . shall apply unless the probable intention of the testator, as indicated by the will and relevant circumstances, is contrary." N.J.S.A. 3B:3-33.1(a).

The doctrine of probable intent is "a rule of construction or interpretation." In re Est. of Flood, 417 N.J. Super. 378, 382 (App. Div. 2010). The doctrine can take two forms: interpretation and reformation. In re Tr. of Nelson, 454 N.J. Super. 151, 159 (App. Div. 2018). "[R]eformation involves

remaking or modifying an instrument, to correct mistakes, to fulfill an unexpressed intention, or to address circumstances that were unforeseen." Id. at 160. "[T]he more rigorous clear-and-convincing standard of proof applies to reformation." Ibid.

Because the trial court's reformation of the will is rooted in its interpretation of the PSA, we recite the relevant Family Part principles here.

We "recognize property settlement agreements as 'fall[ing] within the category of contracts enforceable in equity.'" Flanigan v. Munson, 175 N.J. 597, 606 (2003) (alteration in original) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). "Absent 'compelling reasons to depart from the clear, unambiguous, and mutually understood terms of the [property settlement agreement],' a court is generally bound to enforce [them]." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 589 (App. Div. 2016) (quoting Quinn v. Quinn, 225 N.J. 34, 49 (2016)).

Appellants contend that the trial court's interpretation and enforcement of the PSA led to an unfair and unjust result in equity, because such an interpretation compelled Marianne to support her children in perpetuity. They further contend that the trial court's interpretation of the PSA effectively required her to pay one hundred percent of the carrying costs on a property in

which, in the trial court's analysis, she never possessed more than a fifty percent interest.

A survey of our jurisprudence reveals that resolving conflicting terms between a testator's property settlement agreement and their will has not been addressed in a reported opinion. We "typically give[] considerable weight to Restatement views, and [have], on occasion, adopted those views as the law of this [s]tate when they speak to an issue that our court[] [has] not yet considered." Citibank, N.A. v. Est. of Simpson, 290 N.J. Super. 519, 530 (App. Div. 1996). We do so here.

Section 11.3 of the Restatement (Third) of Prop.: Wills and Other Donative Transfers (A.L.I. 2003) states

> if a transfer made in a will . . . is made pursuant to a contract, such as . . . a divorce settlement . . . , an ambiguity in the implementing document of transfer is resolved in accordance with the construction that accords with the transferor's contractual obligation, in the absence of persuasive evidence that the transferor intended to breach the contract.
>
> [(Emphasis added).]

Section 11.1 of the Restatement defines ambiguity. It states, "[a]n ambiguity in a donative document is an uncertainty in meaning that is revealed by the text or by extrinsic evidence other than direct evidence of intention

contradicting the plain meaning of the text." The Restatement identifies two types of ambiguity, patent and latent. "A patent ambiguity is an ambiguity that is apparent from the text of the donative document." Id. § 11.1 cmt. b. "A latent ambiguity is an ambiguity that is not apparent merely from reading the text of the donative document but becomes apparent from extrinsic evidence." Id. § 11.1 cmt. c.

We apply these principles to Marianne's will.

Scanning the will for patent ambiguity, we note paragraph three is crystal clear. It states, "I specifically leave nothing of my estate to my sons, MARIO CINELLI and GENIO CINELLI[,] and my brother, JOSEPH CANOVA, their heirs and assigns. I specifically disinherit these individuals and their families for personal reasons well-known to them." There is no ambiguity apparent from the text of paragraph three. Paragraph three is quite direct, and it does not conflict with any other language in the will. A review of the entire will does not establish that Marianne created an ambiguity by omission.

Turning to latent ambiguity, we consider the PSA as evidence extrinsic to the will, as the Probate Part did. However, we depart from the court's conclusion, as a matter of law, that the effect of the PSA essentially limited

A-1696-23

Marianne to a fifty-percent ownership interest in the former marital property during her lifetime, and indeed after her death. We reach a different conclusion.

There are two conditions in paragraph six of the PSA which would have triggered a sequester of one-half of the proceeds from a sale of the home. The first condition, spelled out in detail, was Marianne's remarriage. Had she gotten remarried, the former marital home had to be sold <u>before</u> her remarriage. One-half of the proceeds from such a sale were to be placed in trust for Mario and Genio. The second condition was defined more simply. It was the sale of the former marital home <u>at</u> <u>any</u> <u>time</u>. This more simply defined condition was silent as to the method of distribution of the sale proceeds and merely referred to the distribution language in the first condition.

Neither condition for the distribution of sale proceeds was met in the forty-five years Marianne lived after her divorce. The record shows that she never remarried, nor did she sell the home at any time. Upon her death in 2022, the entire interest of the marital home passed to her estate, an estate controlled by her 2019 will. We disagree with the trial court's legal conclusion that paragraph six created in Mario and Genio a fifty percent fee simple ownership interest in the home. The undisputed record shows the PSA first established a transfer of Lawrence's interest in the marital home to Marianne. She had a full

A-1696-23

fee simple ownership interest in the home as of the date of the final judgment of divorce. The conditions which would have manifested Mario and Genio's interest in the proceeds of a prospective sale of the home, not in the home itself, never occurred.

Because the will is unambiguous and the conditions for distribution did not occur during Marianne's lifetime, we conclude that the trial court had no grounds on which to reform the will to conform to the PSA. Consequently, we reverse the order granting summary judgment for Mario and awarding attorney's fees, and remand to the Probate Part for entry of summary judgment for the estate and the Attorney General.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1696-23